X FILED ___ LODGED
___ RECEIVED ___ COPY
MAR 2 6 2008
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY
SEALED

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>1. Jeffrey Crandell; (Counts 1-35)<br>2. Jake Whitman; (Counts 1-35)<br>3. Kurt Douglas Holm; (Counts 1-35)<br>4. Erin Leastman; (Counts 1-35)<br>5. Fred Crum; (Counts 1-35)<br>6. Tyson Young; (Counts 1-35)<br><br>Defendants. | CR08-0255 PHX-ROS(DKD)<br><br>**No. CR**<br><br>**INDICTMENT**<br><br>VIO: 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud) Count 1<br><br>18 U.S.C.§ 1344 (Bank Fraud) Counts 2-18<br><br>18 U.S.C. § 1957 (Transactional Money Laundering Greater than $10,000) Counts 19-35<br><br>18 U.S.C. § 2 (Aid and Abet) Counts 1-35 |

THE GRAND JURY CHARGES:

**INTRODUCTORY ALLEGATIONS**

At all times material to this indictment:

1. Defendant JEFFREY CRANDELL ("CRANDELL"), age 31, was a resident of Mesa, Arizona.

2. Defendant JAKE WHITMAN ("WHITMAN"), age 48, was a resident of Mesa, Arizona.

3. Defendant KURT DOUGLAS HOLM ("HOLM"), age 46, was a resident of Mesa, Arizona and was self-employed as an appraiser.

4. Defendant ERIN LEASTMAN ("LEASTMAN"), age 26, was a resident of Gilbert, Arizona.

5. Defendant FRED CRUM ("CRUM"), age 35, was a resident of Gilbert, Arizona.

6. Defendant TYSON YOUNG ("YOUNG"), age 28, was a resident of Gilbert, Arizona.

7. Defendants CRANDELL, WHITMAN and Crum were mortgage loan officers at Academy Mortgage ("Academy") located in Mesa, Arizona.

8. Northstar Financial was a wholly owned subsidiary of Academy and was the initial lender on several of the subject properties.

9. At all times material to the indictment, LEASTMAN was an escrow officer initially employed by Stewart Title and then in late 2006 was employed by Academy. LEASTMAN was paid a commission at Stewart Title and Academy for loans on properties that were sold.

10. At all times material to the indictment, WHITMAN was a partner in Whitcock Properties.

11. At all times material to the indictment, M & I Bank ("M &I") and Towne Bank of Arizona ("Towne Bank") were banks, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"). Uniform Loan Applications ("loan applications") and other loan documents were submitted to M & I and Towne Bank so buyers of Whitman and Crandell's properties could obtain loans for the purchase of the properties.

**COUNT 1**

**Conspiracy to Commit Bank Fraud**

**[18 U.S.C. § 1349]**

12. Paragraphs 1 through 11 of the Introductory Allegations are realleged and reincorporated as is fully set forth herein.

13. Beginning no later than on or about September, 2005 and continuing to and including a date unknown to the grand jury, but at least until November 30, 2005, within the District of Arizona and elsewhere, defendants CRANDELL, WHITMAN, HOLM, LEASTMAN, YOUNG, CRUM and others, known and unknown to the grand jury, knowingly combined, conspired and agreed with each other and with others known and unknown to the grand jury to commit certain offenses against the United States, to wit: Bank Fraud, in violation of Title 18, United States Code, Section 1344.

**PURPOSE OF THE CONSPIRACY**

14. The purpose of the conspiracy was as follows:

a. To falsely and fraudulently inflate the value of the properties in order to justify a loan for an amount that was substantially more than the actual value of the properties;

b. To obtain loans from either M & I or Towne Bank by submitting documents containing false and fraudulent representations; and

c. To share in the proceeds of the loan and/or receive a fee for their role in the sale.

**THE MANNER AND MEANS OF THE CONSPIRACY**

15. It was part of the conspiracy, and among the manner and means used to execute it, that defendants CRANDELL, WHITMAN and others solicited family members and friends to buy at least nineteen (19) unimproved residential properties ("properties") which were owned by WHITMAN and CRANDELL.

16. It was further part of the conspiracy, and among the manner and means used to execute it, that defendants CRANDELL, WHITMAN and HOLM would inflate the values of the properties.

17. It was further part of the conspiracy, and among the manner and means used to execute it, that defendants CRANDELL, WHITMAN, LEASTMAN and others created false and fraudulent documents, including: employment, asset and income verifications in order to qualify buyers for loans from either M & I or Towne Bank.

18. As a further part of the conspiracy, and among the manner and means used to execute it, the defendants falsely and fraudulently represented or caused to be represented in the Uniform Residential Loan Application that no part of the down payment would be borrowed.

19. It was further part of the conspiracy, and among the manner and means used to execute it, that defendants CRANDELL, WHITMAN, and LEASTMAN would alter buyers' bank and income statements so that it would appear that a buyer had more assets and income than they actually had. These altered statements would be submitted to M & I and Towne Bank in order to qualify the buyer for the loan.

20. It was further part of the conspiracy, and among the manner and means used to execute it, that LEASTMAN would serve as the escrow officer on the sale for all the subject properties.

21. It was further part of the conspiracy, and among the manner and means used to execute it, that defendants CRANDELL and WHITMAN directed appraiser HOLM to prepare appraisals that valued the properties at a price required to make a profit on the sale rather than the actual value of the property. This was done by providing HOLM the amount of loan needed before he conducted the appraisal.

22. HOLM inflated the value of the property by including in the appraisal improvements to the property that did not exist. For example, he included non-existent improvements such as roads, sewer systems and electricity.

23. It was part of the conspiracy, and among the manner and means used to execute it, that the loan applications represented that the source of the down payment was from the buyer when in reality the funds were provided by CRANDELL and WHITMAN.

24. It was part of the conspiracy, and among the manner and means used to execute it, that defendants CRANDELL and WHITMAN purchased cashier's checks from Compass Bank or Bank of America accounts for use as the down payment and to reinforce the appearance that the down payment was provided by the buyer. At closing, CRANDELL and WHITMAN were reimbursed for the down payments they had financed.

**Overt Acts**

25. In furtherance of the aforementioned conspiracy, the defendants CRANDELL, WHITMAN, HOLM, LEASTMAN, CRUM, YOUNG and their co-conspirators performed the following overt acts in the District of Arizona and elsewhere:

**Lot A-3, S. 204th Street**

26. In September 2005, HOLM provided the appraisal for the above property and included improvements that did not exist. The appraisal substantially inflated the value of the property.

27. In September 2005, the loan application, prepared by CRANDELL and LEASTMAN, also represented that Rogers put down $122,423.94 toward the purchase of the lot. This $122,423.94 actually was provided by CRANDELL.

28. In October 2005, Leastman notarized a warranty deed, conveying lot A-3, S. 204th Street to YOUNG. CRANDELL then brokered a deal for the purchase of the property between Phillip Rogers("Rogers") (buyer) and YOUNG as the purchaser.

29. In October 2005, the loan application, prepared by CRANDELL and LEASTMAN, represented that Rogers had a $235,418.00 balance at Compass Bank. In fact, Rogers has never had an account at Compass Bank.

**Lot A-4, S. 204th Street**

30. In September 2005, Leastman notarized a warranty deed, conveying lot A-4, S. 204th Street to YOUNG. HOLM provided the appraisal for the property and included improvements that did not exist. The appraisal substantially inflated the value of the property.

31. In September 2005, Rogers also purchased lot A-3, S. 204th Street, from YOUNG.

32. In September 2005, the loan application prepared by CRANDELL and LEASTMAN represented that Rogers had a $235,418.00 balance at Bank of America. Rogers does have an account at Bank of America but his account balance at the time of the loan was $30,000.00. The loan application also falsely represented that Rogers put down $111,629.57 toward the purchase of the property. In fact, Rogers only put $2,500 of his own money down. The rest was provided by CRANDELL.

**Lot A-2, S. 204th Street,**

33. In September 2005, Leastman notarized a warranty deed, conveying lot A-2, S. 204th Street to YOUNG.

34. In September 2005, Joshua Frazier ("Frazier") purchased lot A-2, S. 204th Street, from YOUNG. The deal was brokered by CRANDELL.

35. In August 2005, HOLM provided the appraisal for the property and included improvements that did not exist. The appraisal substantially inflated the value of the property.

36. The loan application, prepared by CRANDELL and LEASTMAN in September 2005, stated that Frazier had an income of $24,999.00 per month. Frazier's actual income at the time was approximately $40,000 to $50,000 per year. The loan application also represented that Frazier had a checking account at Desert Schools Credit Union with a balance of $121,236.00. Frazier never had a balance of $121, 236 in his account at Desert School Credit Union. Additionally, the loan application represented that Fraizer had an account at M & I with a balance of $105,341.00. Although Frazier did have a bank account at M & I, he never had a balance of $105,341.00.. In fact, he maintained a balance in that account of approximately $100.00.

37. In September 2005, as part of the application process, Frazier had provided pay stubs to CRANDELL and LEASTMAN reflecting his true income. The pay stubs were altered by CRANDELL and LEASTMAN to reflect an income higher than Frazier was making in order to qualify him for a loan.

**Lot B-2, San Tan Boulevard**

38. In September 2005, Leastman notarized a warranty deed, conveying lot B-2, San Tan Boulevard to YOUNG.

39. In August 2005, HOLM provided the appraisal for the property and included improvements that did not exist. The appraisal substantially inflated the value of the property.

40. In September 2005, Frazier purchased lot B-2, San Tan Boulevard, from YOUNG. The sale was brokered by CRANDELL. At closing, checks numbered 4438668130 and 4438668164, in the amounts of $93,893.68 and $97,166.92, were purportedly provided by Frazier from a Compass Bank account. Frazier never had an account at Compass Bank. The checks were actually drawn off of CRANDELL's Compass Bank account.

41. The loan application, prepared by CRANDELL and LEASTMAN in September 2005, falsely stated that Frazier had an income of $23,837.38 per month. Frazier's actual income was approximately $40,000 to $50,000 per year. The loan application falsely represented that Frazier had a checking account at Desert Schools Credit Union with a balance of $308,723.00. Frazier never had a balance of $308,723.00. The loan application falsely represented that he had an account at M & I Bank with a balance of $105,000. Although Frazier did have a bank account at M & I Bank but he never had a balance of $105,000.

42. In September 2005, as part of the application process, Frazier had provided pay stubs and W-2 statements to CRANDELL and LEASTMAN. The pay stubs and W-2 statements were altered to reflect an income higher than Frazier was making.

**Lot 3 Chandler Heights**

43. In August of 2005, WHITMAN purchased Lot 3 Chandler Heights and obtained title by warranty deed, which was notarized by LEASTMAN. The property was transferred to Pinnacle Investment Properties, LLC ("Pinnacle"). WHITMAN is the sole member of Pinnacle.

44. The loan application, prepared by CRANDELL and acknowledged by LEASTMAN in August of 2005, contained a Washington Mutual bank statement, for the period of July 23, 2005 through August 18, 2005, that falsely reflected a balance of $274,442.18. LEASTMAN has a joint account with Joshua Leastman at Washington Mutual but the balance for the above time period was $4,442.18.

45. In August of 2005, HOLM provided the appraisal for the property and included improvements that did not exist, and as a result, the appraisal substantially inflated the value of the property.

46. In September of 2005 Joshua Leastman and LEASTMAN, husband and wife, purchased Lot 3 Chandler Heights. The sale was brokered by CRANDELL. At closing, the down payment, in the amount of $125,017.56, came from a Bank of America account in the name of WHITMAN. The loan application, however, reflects that the down payment coming from Joshua and ERIN LEASTMAN.

**Lot B-5 San Tan Boulevard**

47. In September of 2005, LEASTMAN notarized a warranty deed, conveying Lot B-5 San Tan Boulevard and quit claimed it to YOUNG.

48. In September of 2005, John Lundin ("Lundin") purchased Lot B-5 San Tan Boulevard from YOUNG. The sale was brokered by CRANDELL. At closing, the down payment, in the amount of $90,754.76, came from a Compass Bank account in the name of Desert View Construction. The loan application falsely reflected the down payment coming from the borrower Lundin. The loan application, which was prepared by CRANDELL and acknowledged by LEASTMAN, falsely represented that Lundin had a checking account at

Bank One with a balance of $193.634.00. Although Lundin had an account at Bank One, at the relevant time, it had a balance of no more than $5,000.00.

49. The loan application also reflected that (buyer) had an account at Wells Fargo with a balance of $172,500.00. Lundin only had a credit line from Wells Fargo in the amount of $75,000.00.

50. In September 2005 Lundin had a 401(k) account at the Hartford Group in the amount of approximately $8,000.00. He provided this statement to CRANDELL. The statement was altered by or at the direction of CRANDELL to reflect a false account balance of $132, 296.72.This statement was included by CRANDELL as part of the loan application packet.

51. The stated income on the loan application, prepared by CRANDELL in September 2005, falsely reflected Lundin's monthly income to be $9, 457.00. In fact, Lundin's monthly income was no more than approximately $3100.00 per month.

52. HOLM provided the appraisal for the property and included improvements that did not exist and used comparable sales located in superior neighborhoods. As a result the appraisal substantially inflated the value of the property.

**Lot 4 Parcel B East Stacey Road**

53. In August 2005, WHITMAN purchased Lot 4 Parcel B East Stacey Road and obtained title by warranty deed, which was notarized by LEASTMAN.

54. In August 2005, HOLM provided the appraisal for the property and included improvements that did not exist and as a result the appraisal substantially inflated the value of the property.

55. Lundin purchased Lot 4 Parcel B East Stacey Road. The sale was brokered by CRANDELL. At closing, the down payment, in the amount of $121,400.96, came from a Bank of America account in the name of Pinnacle Investments. The loan application falsely reflects the down payment was to come from the borrower John Lundin.

56. In August 2005, the loan application prepared by CRANDELL falsely represented that Lundin had a checking account at Bank of America with an approximate balance of

$213.754.00. At the time of the purchase Lundin did not have an account at Bank of America. Lundin has a 401(k) account at the Hartford Group in the amount of approximately $8,000.00. He provided the 401(k) statement to CRANDELL. CRANDELL and LEASTMAN altered the statement to reflect a false balance of $132,296.72. The stated income on the loan application prepared by CRANDELL reflected a monthly income of $9,457.00. In fact, Lundin's monthly income was no more than $3900.00.

**Lot 4 Parcel A East Stacey Road**

57. In November 2005, WHITMAN, a member/principal of Whitcock properties, purchased Lot 4 Parcel A East Stacey Road. Whitcock sold Lot 4 Parcel A East Stacey Road in November 2005 to Karl Baker for $525,000.00. HOLM provided the appraisal for the property and included improvements that did not exist and as a result, the appraisal substantially inflated the value of the property.

All in violation of 18 U.S.C. §§ 1349 and 2.

**COUNTS 2 THROUGH 18**

**Bank Fraud**

**[18 U.S.C. § 1344]**

58. Paragraphs 1 through 59 of the Indictment are re-alleged and reincorporated.

59. On or about the dates set forth below, within the District of Arizona and elsewhere, defendants CRANDELL, WHITMAN, HOLM, LEASTMAN, CRUM, YOUNG and others known and unknown to the grand jury, having knowingly and willfully devised and intending to devise a scheme and artifice to defraud a financial institution, and to obtain money, funds, credits, assets or other property in the custody or control of a financial institution, by means of materially false and fraudulent pretenses, representations and promises.

60. For the purpose of executing and attempting to execute said scheme, defendants, obtained or caused to be obtained the following loans from the following federally insured financial institutions, as set forth below, each such instance being a separate Count of this Indictment:

| Count | Approximate Date of Loan | Lender | Property | Approximate Loan Amount |
|---|---|---|---|---|
| 2 | 9-2-2005 | M & I Bank | Lot 3, Chandler Heights | $444,000.00 |
| 3 | 9-13-2005 | M & I Bank | Lot 4, Parcel B | $448,000.00 |
| 4 | 9-21-2005 | M & I Bank | Lot A-1 204th Street | $311,500.00 |
| 5 | 9-22-2005 | Towne Bank of Arizona | Lot B-3 San Tan Blvd. | $340,000.00 |
| 6 | 9-23-2005 | M & I Bank | Lot B-4 204th Street | $356,000.00 |
| 7 | 9-23-2005 | M & I Bank | Lot B-2 San Tan Blvd. | $340,000.00 |
| 8 | 9-27-2005 | Towne Bank of Arizona | Lot B-1 San Tan Blvd. | $340,000.00 |
| 9 | 9-29-2005 | M & I Bank | Lot A-2 204th Street. | $356,000.00 |
| 10 | 10-31-2005 | M & I Bank | Lot A-3 204th Street | $348,749.00 |
| 11 | 11-30-2005 | M & I Bank | Lot A-4 204th Street | $400,800.00 |
| 12 | 11-30-2005 | M & I Bank | Lot 4, Parcel A on E. Stacey | $393,647.00 |
| 13 | 11-30-2005 | M & I Bank | Lot 5, Parcel A on E. Stacey | $397,447.00 |
| 14 | 11-30-2005 | M & I Bank | Lot 3, Parcel A on E. Stacey | $393,697.00 |
| 15 | 11-30-2005 | M & I Bank | Lot 1, Parcel A on E. Stacey | $393,697.00 |
| 16 | 11-30-2005 | M & I Bank | Lot 5, Parcel B on E. Stacey | $397,447.00 |
| 17 | 11-30-2005 | M & I Bank | Lot 2, Parcel A on E. Stacey | $363,697.00 |
| 18 | 11-30-2005 | M & I Bank | Lot 1, Parcel B on E. Stacey | $360,389.00 |

All in violation of Title 18, United States Code, Sections 1344 and 2, and Pinkerton v. United States, 328 U.S. 640 (1946).

## COUNTS 19 THROUGH 35

### Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity

### [Title 18 U.S.C. § 1957 ]

61. Paragraphs 1 through 60 of the Indictment are re-alleged and reincorporated.

62. On or about the dates set forth below, within the District of Arizona and elsewhere, defendants CRANDELL, WHITMAN, HOLM, LEASTMAN, CRUM, YOUNG and others known and unknown to the grand jury, did knowingly engage, and attempt to engage, in a monetary transaction by, through and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000.00, that is, the negotiation of the checks identified below which were drawn upon M & I and Towne Bank, in the amounts set forth below, such property having been derived from a specified unlawful activity, that is bank fraud in violation of Title 18, United States Code, § 1344:

| Count | Approximate Date of Loan | Lender | Property | Approximate Loan Amount |
|---|---|---|---|---|
| 19 | 9-2-2005 | M & I Bank | Lot 3, Chandler Heights | $444,000.00 |
| 20 | 9-13-2005 | M & I Bank | Lot 4, Parcel B | $448,000.00 |
| 21 | 9-21-2005 | M & I Bank | Lot A-1 204th Street | $311,500.00 |
| 22 | 9-22-2005 | Towne Bank of Arizona | Lot B-3 San Tan Blvd. | $340,000.00 |
| 23 | 9-23-2005 | M & I Bank | Lot B-4 204th Street | $356,000.00 |
| 24 | 9-23-2005 | M & I Bank | Lot B-2 San Tan Blvd. | $340,000.00 |
| 25 | 9-27-2005 | Towne Bank of Arizona | Lot B-1 San Tan Blvd. | $340,000.00 |
| 26 | 9-29-2005 | M & I Bank | Lot A-2 204th Street. | $356,000.00 |
| 27 | 10-31-2005 | M & I Bank | Lot A-3 204th Street | $348,749.00 |
| 28 | 11-30-2005 | M & I Bank | Lot A-4 204th Street | $400,800.00 |
| 29 | 11-30-2005 | M & I Bank | Lot 4, Parcel A on East Stacey | $393,647.00 |

| Count | Approximate Date of Loan | Lender | Property | Approximate Loan Amount |
|---|---|---|---|---|
| 30 | 11-30-2005 | M & I Bank | Lot 5, Parcel A on East Stacey | $397,447.00 |
| 31 | 11-30-2005 | M & I Bank | Lot 3, Parcel A on East Stacey | $393,697.00 |
| 32 | 11-30-2005 | M & I Bank | Lot 1, Parcel A on East Stacey | $393,697.00 |
| 33 | 11-30-2005 | M & I Bank | Lot 5, Parcel B on East Stacey | $397,447.00 |
| 34 | 11-30-2005 | M & I Bank | Lot 2, Parcel A on East Stacey | $363,697.00 |
| 35 | 11-30-2005 | M & I Bank | Lot 1, Parcel B on East Stacey | $360,389.00 |

In violation of Title 18, United States Code, §§ 1957 and 2, and Pinkerton v. United States, 328 U.S. 640 (1946).

**FORFEITURE ALLEGATION**

63. As a result of committing the conspiracy offense alleged in Counts One (1) through Thirty-Five (35) of this Indictment, defendants CRANDELL, WHITMAN, HOLM, LEASTMAN, CRUM and YOUNG shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461 any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §§ 1344, 1349 and 1957.

64. As a result of committing one or more of the bank fraud offenses alleged in Counts Two (2) through Eighteen (18) of this Indictment, defendants CRANDELL, WHITMAN, HOLM, LEASTMAN, CRUM and YOUNG shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(2), any property constituting, or derived from, proceeds the said defendants obtained directly or indirectly, as a result of the said violations.

65. As a result of committing one or more of the money laundering offenses alleged in Counts Nineteen (19) through Thirty-Six (35) of this Indictment, defendants CRANDELL, WHITMAN, HOLM, LEASTMAN, CRUM and YOUNG shall forfeit to the United States pursuant to: 1) 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461 any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1344, including, but not limited to, $4,000,000.00 in United States currency; and 2) 18 U.S.C. § 982(a)(1) any property, real or personal, involved in such offense, or any property traceable to such property.

66. Cash Proceeds: The government will seek a judgment for the sum of approximately $4,000,000.00 in U.S. Currency and all interest and proceeds traceable thereto, in that such sum in aggregate constitutes the proceeds derived from the criminal violations, for which the defendants who are convicted of one or more of said offenses shall be jointly and severally liable.

67. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property, including but not limited to all property, both real and personal, owned by the defendants.

All in violation of Title 18, United States Code, §§ 981(a)(1)(c), 982(a)(1) and (a)(2) and 1344, and Title 28, United States Code, §2461.

A TRUE BILL

/s/
FOREPERSON OF THE GRAND JURY
Date: March 26, 2008

DIANE J. HUMETEWA
United States Attorney
District of Arizona

/s/
KEVIN M. RAPP
Assistant U.S. Attorney