Mark J. Berardoni
State Bar No. 012970
Luhrs Tower
45 West Jefferson St., Suite 810
Phoenix, Arizona 85003-2317
(602) 257-1295
Berardonilaw@yahoo.com
Attorney for Defendant - *Erin Michele Leastman*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR08-00255-004-PHX-GMS |
| Plaintiff, | |
| v. | SENTENCING MEMORANDUM/ OBJECTIONS AND REQUEST FOR DEPARTURE FROM THE SENTENCING GUIDELINES/ 18 U.S.C. 3553 ANALYSIS |
| Erin Michele Leastman, | |
| Defendant. | |

Defendant, Erin Michele Leastman, by and through undersigned counsel, respectfully sets forth her requests that this Court determine that sufficient facts and legal authorities exist to sustain her objections, to depart from the sentencing guidelines as formulated by the United States Sentencing Commission which are presented in the United States Probation Officer's Presentence Investigation Report. It is further requested that this court consider the factors as set forth in 18 U.S.C. Section 3553(a) and determine that under the facts of this case that a sentence below the advisory guidelines is "reasonable" pursuant to *Gall v. United States,* 128 S.Ct. 586, 596 (2007); *Kimbrough v. United States,* 128 S.Ct. 558, 564, 570 (2007); *Rita v. United States,* 127 S.Ct. 2456, 2465, 2468 (2007); *Booker v. United States,* 543 U.S. 220, 245-46 (2005) The relevant facts and legal authorities are more fully set forth in the following Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED this ___ day of March, 2010.

                                         s/ Mark J. Berardoni
                                         Mark J. Berardoni
                                         Attorney for Defendant-*Erin Michele Leastman*

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. Relevant Facts

Erin Leastman is currently 28 years old and is about to face sentencing for her first felony conviction. She has not had any prior police contact, nor, any subsequent police contact since her arrest. By all who know her and have supported her throughout this process, all are consistent that these discretions of Erin's are truly out of character. They know her to be a religious person, one who is always caring and wanting to help others, and as a mother who has adopted and loves her two children. Erin Leastman was only 24 years old when she became involved with the others in this case. Jake Whitman, co-defendant was 48 years old at the time. Jake was the branch manager at Academy Mortgage when he first approached Erin who was working at Stewart Title where Erin was an escrow agent. During the course of her employment at Stewart Title, Erin did several things wrong. Things that she truly regrets and has already felt the ramifications of her actions. However, Erin's complicities have been exaggerated, not with standing that she was the escrow agent on the properties. (except hers) For example, she never was made privy that the down payments on the lots were not by the buyers, but she admits that after some period of time, she had her suspicions. She was wrong and did notarize some signatures even though the signers were not present. However she was told by the others that they were family members. She was never told that some of the signatures were forged, nor, at the time did she have reason to suspect the same. After some time, Erin changed employment and left Stewart Title to go to work at American Title for about a year. Then a year later, she was offered a position as an assistant to the Whitman, Crandell, and Crum at Academy Mortgage.

It was not until much later while she was working at Academy Mortgage did the fraud actually manifest itself and leave the realm of suspicion and speculation, has it had been in the past, to becoming obvious. This occurred when she was the assistant to Whitman, Crandall, and Crum. One of her bosses came in looking for another boss to assist him in handling some paperwork. When he could not find the other, he then told Erin "you are the assistant, I need you to do this" He then handed her a cutout "9" to be placed on a financial statement. She did have a choice at that point, but made the wrong one. She chose to keep her job and now she is dealing with that mistake.

The circumstances surrounding Erin's purchase of her own lot are as follows: First and foremost, she makes no excuses and knows she erred. However she too was mislead during this purchase. For example, she knew when filling out the forms that she personally did not have the funds for the down payment even though she indicated on the application that she did. But she was told by a co-defendant that the down payment can come from the bank loan. She believed that she was being sold the lot at a discount. So this would enable them to raise the value of the lot to the fair market value and in essence the loan itself could recapture the down payment This lends credence to her naivety, and the other's cunningness. Erin falsely believed that things were a bit more foot loose and fancy free than they were. She did see many legal creative home loans. After all, Arizona and elsewhere around 2005 was akin to being at Sutter's Mill, California, back in 1849. Only this time it wasn't gold that was shining, it was the real estate market. She told them that she could not qualify for a such a loan, but was assured that with "stated income" she would qualify. She provided a financial statement. In turn, this financial statement was altered, but not by Erin. She was not aware of its alteration until after her arrest.

The purpose of this introduction is not to show that Erin did nothing wrong, but rather, to help set the record straight as to her actual role in the matter. She knew what she did was wrong but she did not have a clue as to the extent of what was actually going on. She was knowledgeable in some aspects, but Erin was not nearly as savvy as some of the others. She never believed anyone was going to loose any money as a result of any of her actions. The record itself showed that the others intentionally kept her out of the major loops, both in information and in profit. Other than the attempted profit anticipated with the buying of her own parcel, Erin did not partake in any of the substantial profits, nor from the gains from any of the loans. The purchasing of her lot yielded no profit, and rather, had placed her in such financial distress that this purchase actually resulted in her filing bankruptcy.

Erin Leastman was never invited to be a true member of the club, nor to share in any of its spoils, but rather, her role was to be that of a tool which the club would use to achieve their ends without much care for her.

B. **Objections**

Paragraph #8:

   The report indicates that Erin left the employment of Stewart Title and immediately starting working at Academy Mortgage. Ms. Leastman left Stewart Title and went to work for American Heritage Title for almost a year before starting to work as an assistant at Academy Mortgage.

Paragraph #9:

   Erin Leastman was aware that she breached her duties by notarizing signatures that she did not witness at the request of Co-Defendant Fred Crum. However she was unaware that the signatures she notarized were fraudulent in nature.

Paragraph #17

   The quote of Ms. Leastman "...she continued her involvement for the money and because she got up in the 'hype' of the real estate market. " is not expressed properly in the report. The "money" that Ms. Leastman may have referred to related to her keeping her employment at Academy. She never received any monies, other than some funds that were forwarded for her parcel purchase. The "hype" referred to why she got involved in buying her own property, as opposed to her performing or continuing any criminal activities.

Paragraph #20

   The writer added 18 levels pursuant to U.S.S.S.G. 2B1.1(b)(1)(J) because a total loss amount was assessed at more than $2,500,00.00. However, the loss assessed for Erin should only be +14 pursuant (H) because she should only be held accountable for $400,000.00 to $1,000,000.00. This is the amount stipulated to in the plea agreement and this amount was determined to be appropriate after numerous debriefing by Ms. Leastman and the Government's own investigations.

   This lesser amount is further supported by Ms. Leastman's lack of forseeability into the extent of the criminal actions of the others. Though she recognizes and concedes wrongdoing, Erin was amazed upon learning the extent of what actually had transpired. She did not deliberately close a blind eye, but rather, her youth and naivety had kept her in the dark. Only "...reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" are to be considered

as relevant conduct. U.S.S.G. 1B1.3 (a)(1)(B).

Paragraph #22:

There should be a 2 levels decrease for Ms. Leastman's minor role in the matter pursuant to U.S.S.G 3B1.2(b). Although she has been assessed two additional level for her breach of position of trust with the public, this in and of itself does not equate to her role when compared to others. Erin when compared to the others is less culpable than the other participants.

Paragraph #42

The last sentence has a date of 2001. It is actually 2007.

## C. Departures

### 1. Post-Offense Rehabilitation

Erin Leastman since her arrest almost two years ago, has demonstrated that she has returned to her solid character as illustrated in the letters of friends and family filed under separate cover. Since her arrest she has adopted the two children who were placed in care. Erin has been in full compliance with the court's orders as set forth in her release conditions. Since her arrest, Erin has already begun to feel the significant collateral consequences of her actions. Additionally, the fear and anticipation of the ultimate metered-out sentence has place much anxiety on her.

Erin has reaffirmed her intentions to continue living a law-abiding life and raising her family. Post-Offense Rehabilitation has been held to provide grounds for departure to reward those who have demonstrated their commitment to repairing and rebuilding their lives. *United States v. Green*, 1998 WL 541374 (C.A.9(Cal.) 1998) In *Green,* the district court identified three factors that played a role in determining that departure was warranted. The factor relevant to the case-at-bar is post-offense conduct.

## D. 18 U.S.C. Section 3553(a)

The court shall impose a sentence sufficient, but not greater than necessary. 18 U.S.C. Section 3553(a) The following are the seven factors the court should consider in imposing a sentence:

(1)  "The nature and circumstances of the offense and the history and characteristics of the defendant."

This conspiracy involved major fraud, no doubt. Ms. Leastman knowing committed criminal acts in several ways. However, she was not fully confided in by the others. She was only twenty-three years old when she was recruited by those more older and more savvy. The history and characteristic of Ms. Leastman portray that she did make mistakes, but her strong back round has already enabled her to illustrate her solid character.

(2)  The need for the sentence imposed-

    (A)  [must] reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

Ms. Leastman has a profound respect for the law. Erin has already felt the wrath of a Federal prosecution. Now she recognizes that she is to be branded as a felon and must deal with all its consequences. Additionally, she knows that supervision by a federal agency is still going to be happening into her distant future. However, she is hopeful that ths court will grant her probation and determine that would be a just punishment under her circumstances.

    (B)  to afford adequate deterrence to criminal conduct;

Erin has already shown her willingness to abide by the laws and the court orders. She is unlikely to be a recidivist, based on her character, and it is doubtful that she will ever place herself in a situation that would bring shame upon herself and her family again. If she were to be sent to prison her adopted children may find themselves facing foster care once again.

    (C)  to protect the public from further crimes of the defendant;

See previous section.

    (D)  to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Ms. Leastman does not seem to require any programs except perhaps for some counseling based on past events in her earlier life. However, any programs that she may avail herself can be provided by the U.S. Probation Office.

(3)  The kinds of sentences available;

Prison, probation, a split sentence are all available.

1  (4)   the kinds of sentence and the sentencing range established for-

2  (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines

The presentence report has set forth a Total Offense Level of 24 and a Criminal History Category I, which has a range of 51 to 63 months in the BOP. However, if the court grants Ms. Leastman's objections as to the Offense level and role and then grants the requested departure it would be substantially less than that. For example, the Total Offense Level would then become 18 ( This incorporates the base offense level in the plea agreement and an additional 2 level decrease for role in the offense.)

(5) any pertinent policy statement-

Other than the previously mentioned Ground for Departure, counsel is unaware of any other relevant policy statements.

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

The disparity, if any, would be warranted based on the individual circumstances of Ms. Leastman and her case. However, if the court sustains the objections and grants any departure, this, then would result in no disparity at all.

(7) the need to provide restitution to any victims of the offense.

There are identifiable victims in this matter, and restitution is anticipated to be significant. However, the extent of the losses are in dispute and a hearing will be needed to determine the full extent.

**Conclusion**

When analyzing the above factors, justice would not be offended if Ms. Leastmen was sentenced to a grant of probation. If the court sustains the objection for base offense level and role, the Total Offense would be 18 and Criminal History Category I, this results in a guideline range of 27-33. This range is prior to the granting of any departures. It is requested that Ms. Leastman be granted probation, or in the alternative, to be sentenced to one day imprisonment with credit for time

served and to impose a term of supervised release. This will enable Erin to continue to improve her life and the lives of others as she has done in the past.

RESPECTFULLY SUBMITTED this 13th day of March, 2010.

s/Mark J. Berardoni
Mark J. Berardoni
Attorney for Defendant - *Erin Michele Leastman*

CERTIFICATE OF SERVICE

I hereby certify that on March 13th, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable G. Murray Snow
United States District Judge
Sandra Day O'Connor U.S. Courthouse
401 W. Washington Street
Phoenix, Arizona 85003

Dominic W. Lanza/
Raymond K. Woo
Assistant United States Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408

Lisa M. Miller
Senior U.S. Probation Officer
Sandra Day O'Connor U.S. Courthouse
401 W. Washington Street
Phoenix, Arizona 85003


By: s/Mark J. Berardoni