**RAKE PETTI, P.C.**
2701 E. CAMELBACK ROAD
SUITE 160
PHOENIX, ARIZONA 85016
TELEPHONE (602) 773-2622
FACSIMILE (602) 265-2628
Email: fpetti@aztriallaw.com
_____

Frederick R. Petti #011668

Attorneys for Defendant
Jake Whitman

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR08-0255-PHX-GMS |
| Plaintiff, | |
| vs. | **DEFENDANT WHITMAN'S SENTENCING MEMORANDUM** |
| Jeffrey Crandell; Jake Whitman; Kurt Douglas Holm; Erin Leastman; Fred Crum; and Tyson Young, | |
| Defendants. | |

Defendant Jake Whitman is scheduled to be sentenced by this Court at 11:00 a.m. on March 22, 2010. This memorandum is being offered in support of Mr. Whitman. We are requesting that the Court impose a sentence below the 63 month term recommended by the Probation Officer. The basis for this request is twofold. First, the recommendation does not take into account Mr. Whitman's cooperation with the government in this matter. Second, the advisory United States Sentencing Guidelines applied in Mr. Whitman's case calls for a sentence not based on empirical evidence of fair, reasonable sentencing for a financial crime but, rather, on arbitrary political considerations that have no bearing on what actually occurred in Mr. Whitman's case. After *United States v. Booker,* 543 U.S. 220 (2005), and its progeny, this

Court is no longer bound to sentence Mr. Whitman in accordance with the Advisory Guidelines and it may now look to the factors set forth in 18 U.S.C. § 3553(a) to determine what is a fair and reasonable sentence.

This Sentencing Memorandum is supported by the accompanying Memorandum of Points and Authorities and the record in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Sentencing Guidelines Post *Booker***

**A.    *Booker* and its Progeny**

In *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court found that the United States Sentencing Guidelines were "effectively advisory," *id.* at 245, and, in accordance with 18 U.S.C. § 3553(a), the Guidelines were just one of many factors sentencing courts could consider in determining an appropriate sentence. In *Kimbrough v. United States,* 552 U.S. 85 (2007), the Court further clarified its finding in *Booker* that the Guidelines are advisory only, and held that a categorical disagreement with and variance from the Guidelines is not suspect. *Id.* at 91. Thereafter, in *Spears v. United States,* 555 U.S. ___ (2009), the Court stated that district courts "are entitled to reject and vary categorically from the crack-cocaine Guidelines based on *a policy disagreement* with those Guidelines.' *Id.* at ___ (Slip Op. at 5) (emphasis added). Most recently in *Nelson v. United States,* 555 U.S. ___ (2009), the Court emphatically held that the "Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable. *Id.* at ___ (Slip Op. at 3) (emphasis in original).

Regarding Mr. Whitman's sentencing, *Booker* and its progeny stand for the proposition that in considering what is an appropriate sentence for Mr. Whitman under 18 U.S.C. § 3553(a), this Court may categorically reject the underlying premise contained in the Guidelines that lengthy sentences are appropriate in white collar cases, and the Court may, if it chooses, sentence Mr. Whitman far below what may be calculated by strict application of the Guidelines. As set forth below, there are policy appropriate reasons for this Court to break with the lengthy

2

sentences for white collar crimes suggested by the Guidelines, and that it is likewise appropriate to sentence Mr. Whitman to a term of probation.

### B. Lengthy Incarceration Terms Are Not Supported By Empirical Evidence

On August 18, 2009, Mr. Whitman pled guilty to one count of conspiracy to commit bank fraud (in violation of 18 U.S.C. §§ 1344 and 1349) and six counts of bank fraud (in violation of 18 U.S.C. § 1344). As part of his plea agreement with the government, Mr. Whitman agreed to cooperate with the government. Mr. Whitman did, in fact, cooperate with the government in its prosecution of co-defendant Jeffrey Crandell. The Presentence Report writer, Lisa Miller, properly calculated that the Sentencing Guidelines call for a sentencing range between 33 to 41 months. Of course, Ms. Miller's calculation does not account for any downward departure pursuant to a government motion under § 5K1.1.

The problem with the assumption underlying the Guideline policy that longer sentences in white collar crimes will deter future white collar criminals is that the empirical evidence is to the contrary.[1] In other words, lengthy incarceration does not enhance deterrence for financial offenders. Studies of these types of offenders have shown no difference in recidivism patterns between offenders who received jail time and those sentenced to probation. *See* David Weisburd, *Specific Deterrence and Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587, 597 (1985). In fact, white collar criminals who were imprisoned actually have a higher rate of recidivism. *Id.* Recent studies and findings are consistent with earlier

---

[1] By introducing binding regulations for calculating prison terms and allowing for circuit court review of sentencing determinations, Congress intended the Guidelines to limit individual judicial discretion and to make sentences consistent system wide. *See* 28 U.S.C. § 991(b) ("[The Guidelines shall] provide certainty and fairness in meeting the purpose of sentencing, avoiding unwarranted disparities among defendants with similar records who have been found guilty of similar criminal conduct"). The response to the Guidelines and their underlying premise was overwhelmingly critical and, in time, a new disparity developed between judges and lawyers who worked the Guidelines to avoid unfairly harsh sentences and those judges and lawyers who follow the Guidelines as gospel. *See* Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Sentences*, THE YALE LAW JOURNAL, Vol. 101, No. 8, pp. 1681-754 (June 1992).

criminological studies dating back almost forty years. *See* Elizabeth Szockyj, *Imprisoning White Collar Criminals?,* 23 S. Ill. Univ. L. J. 485, 495 (1999). White collar workers are extraordinarily sensitive to public perception, and simply becoming ensnared in the criminal justice system has the greatest impact on offenders. *Id.* At least one study has suggested that shaming white collar criminals may be more effective than longer term sentences. *See* Dan M. Kahan and Eric Posner, *Shaming White-Collar Criminals: A Proposal for Reform of the Federal Sentencing Guidelines*, JOURNAL OF LAW AND ECONOMICS, Vol. XLII, pp. 365-91 (April 1999).

      Mr. Whitman has pled guilty to his criminal activity, cooperated with the government, and he has fully accepted responsibility for his actions. Mr. Whitman did not set out to engage in a course of criminal conduct; he only did so in a misguided attempt to overcome a series of business setbacks. Although he always knew that he was being dishonest in telling the banks that the down payments in his transactions were coming from the buyers when, in fact, such payments were coming from either Mr. Whitman or his co-defendant, Mr. Whitman never intended to cause the banks to suffer a loss. To this point, many of the buyers in Mr. Whitman's transactions were his family members, including his mother, father, aunt, uncle and grandmother. Like many others, Mr. Whitman was convinced that real estate values in Arizona would continue to rise and that his buyers would be able to secure refinancing to allow them to retain ownership of the property they purchased with Mr. Whitman's assistance. He was wrong. When the real estate market turned downward and his buyers could not secure refinancing and were unable to make their mortgage payment, Mr. Whitman made the payments for them until he finally exhausted all of his financial resources.

      Mr. Whitman's actions have cost him dearly. Not only has he lost his material wealth, his actions have cost him his marriage. Moreover, Mr. Whitman has been humbled before his family and in his faith community. As is set forth in more detail later in this pleading, Mr. Whitman has responded to his situation with remarkable resilience, overcoming self-destructive behavior, making amends to both family and community and working to support his

family and meet his obligations. It is hard to imagine what purpose would be served by ordering Mr. Whitman to serve any jail sentence, let alone a term of imprisonment between 33 and 41 months.

We urge this Court to reject the antidotal policy underlying the Guidelines that such lengthy sentences are necessary in financial crimes cases to deter both the defendant and others. Rather, we ask the Court to find that the imposition of lengthy sentences in white collar cases to deter both present and future defendants is unsupported by empirical evidence, and that a more reasonable, just approach is to impose a short sentence that effectuates the sentencing considerations outlined in 18 U.S.C. § 3553.

## II.     18 U.S.C. § 3553(a) Factors

To determine the particular sentence to be imposed, the Court shall consider:

(1)     The nature and circumstances of the offense and history and characteristics of the defendant;

(2)     The need for the sentence imposed –

  (A)   To reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

  (B)   To afford adequate deterrents to criminal conduct;

  (C)   To protect the public from further crimes of the defendant; and

  (D)   To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner…

18 U.S.C § 3553(a)(1).

### A.     Nature And Circumstances Of The Offense

Mr. Whitman was the Manager for the Academy Mortgage branch located in Mesa, Arizona. Although the branch was for a time very successful, in late 2005 the branch began to lose money and Academy Mortgage began charging the losses against Mr. Whitman's

compensation. Before long, Mr. Whitman was working 100 hour weeks and receiving no compensation.

It was at this time that Mr. Whitman entered into a conspiracy with his co-defendants to sell unimproved residential lots by fraudulently concealing from the lending institutions that it was actually Mr. Whitman who provided the money for the down payment and that those funds would be returned to Mr. Whitman at closing. Although Mr. Whitman knew what he was doing was wrong, he justified his actions to himself by assuming that his course of conduct was common in the mortgage industry and that the inevitable increase in real estate values would ensure that the banks would never lose any money. So confident was Mr. Whitman in his self-delusion that he sold lots to both family and friends.

Unfortunately for Mr. Whitman, his confidence that the inevitability of the Arizona real estate market was misplaced and many of his family and friends, but not all, were unable to secure refinancing and the banks suffered the losses set forth in the Presentence Report. Although Mr. Whitman never intended for the banks to lose money, it is fair to say that his decision to cut corners led to the banks loaning money to individuals unable to meet their payment obligations.

**B.     Characteristics Of The Defendant**

The basic characteristics of Mr. Whitman can be gleamed by reading the Presentence Report. He is 33 years old, the oldest of Leslie and Robert Whitman's four sons. He grew up in Tucson, Arizona and after serving a two year mission for his church, he married Angela Decker on March 20, 1998. He and Angela have three children, ages 2 through 8. Unfortunately, Angela filed for divorce after Mr. Whitman's arrest in this matter and the divorce was final in May 2009.

What cannot be learned from reading the presentence report is the true measure of Mr. Whitman. For that, it is best to read the numerous letters of support written to this Court by family and friends. *See* support letters (attached hereto as Exhibit 1). From those letters what

emerges is a description of a good and decent man, not the type of person one would expect to be standing before this Court to be sentenced.  The letters reveal that Mr. Whitman, after initially responding to his indictment with self-destructive behavior, has accepted responsibility for his actions and he has worked diligently to learn from his mistakes and to become a better man.  The letters of support are uniform in their belief that Mr. Whitman has learned from his involvement in the criminal justice system and in their belief that going forward Mr. Whitman will be a contributing member of the community.  In this regard, the Court may want to read the letters from Karl Baker, D.D.S. and Nathan Yetter.

Undersigned counsel is compelled to remark on Mr. Whitman's response to being charged with bank fraud.  When counsel first began representing Mr. Whitman it was obvious to counsel that Mr. Whitman was drinking to excess and was hiding from his problems.  He was overweight and puffy, and unresponsive to counsel's suggestions that he needed to address his substance abuse issues.  In fact, Mr. Whitman denied having any problems with alcohol.  It was during this time that Mr. Whitman traveled to Las Vegas and borrowed money from the Palms Casino and promptly lost that money.

With the aid of counsel, Mr. Whitman came to realize that he was only making his situation worse.  He addressed his drinking problem and he has been clean and sober for over 15 months.  He made amends to his family and friends.  He lost weight and worked to regain his physical health.  He returned to work with vigor, committed to once again provide for his family and meet his obligations to others.  He agreed to plead guilty and to assist the government.  He also reached out to the Palms Casino and he is working to resolve that debt as well.

Counsel has worked as either a federal prosecutor or as defense counsel for over twenty years, and counsel can say without reservation he has never seen a defendant more appropriately accept responsibility for his actions and more commendably work to grow from his difficulties and strive to become a better person.

### C.   Just Punishment For The Offense

In deciding what sentence to impose, this Court must consider the seriousness of Mr. Whitman's offense, the need for the sentence to promote respect for the law, and to provide for a just punishment. There is no question that Mr. Whitman's actions resulted in a serious violation of federal law. Not only did banks suffer losses because of Mr. Whitman's dishonesty, but his family and friends made real estate investments they could not afford to make. In spite of the fact that Mr. Whitman never intended for any loss to occur, his unfounded belief in the infallibility of the Arizona real estate market led him to defraud banks and cause the losses sustained in this case.

Regarding the need to promote respect for the law and the need to impose a just punishment, Mr. Whitman has suffered greatly for his actions. It has cost him his family, his business and his position in his community. It has caused Mr. Whitman tremendous personal pain as he reflects on how his misguided belief in his own business acumen has caused so much pain and suffering for his family and friends and has led to his standing before this Court awaiting to be sentenced. In other words, Mr. Whitman has been shaken to his core by his indictment and further punishment will do little to promote his respect for the law or satisfy any legitimate need to punish the guilty.

### D.   Deterrents To Criminal Conduct

Regarding the need to deter others, Mr. Whitman's willingness to share his mistakes and the resulting consequences with his community will do much to deter others from following the same path. Evidence of the effectiveness of Mr. Whitman's testimony can be found in the attached letters from Nathan Davis, D.D.S., Chris Wallace, Ph.D., Brian J. Holmes, Josh Hough, Heath Bradley and Jordan T. Hodges. Incarcerating Mr. Whitman will neither enhance nor amplify the deterrent effect of his words.

### E. To Protect The Public

There is no need to impose a sentence of incarceration on Mr. Whitman in order to protect the public from further crimes at the hands of Mr. Whitman. He is not the type of person likely to repeat his offense, rather he is the type of person who now understands that nothing good happens from not turning square corners in either business or life. There is little doubt that Mr. Whitman has learned his lesson and that he is no longer a threat to society.

### F. Benefit To The Defendant

There is no benefit to Mr. Whitman in sentencing him to a term of imprisonment. He is already working hard and diligently on his post conviction life. He is providing for his three small children, not only financially but also with love and spiritual guidance. He is a man that has responded to his difficulties honorably and with grace. Nothing will be gained nor served by interrupting his remarkable progress.

## III. Mr. Whitman's Cooperation

Pursuant to his plea agreement, Mr. Whitman agreed to cooperate with the government in its prosecution of Mr. Whitman's co-defendant, Jeffrey Crandell. As part of that cooperation, Mr. Whitman met with the government on several occasions and provided the government with evidence against Mr. Crandell. After Mr. Whitman's cooperation, Mr. Crandell agreed to enter a guilty plea.

## IV. Requested Sentence

Mr. Whitman asks this Court to sentence him to a term of probation or, in the alternative, to a combination of community confinement or home detention that will permit him to continue to work to provide for his family and meet his obligations.

## V. Conclusion

Mr. Whitman respectfully requests the Court to consider the § 3553 factors enumerated above as reasonable grounds for sentencing him to a term of probation or to the less restrictive punishment possible.

9

1  DATED this 16th day of March, 2010.

                                        RAKE PETTI, P.C.

                                        By /s/ Frederick R. Petti
                                              Frederick R. Petti
                                        Attorneys for Defendant
                                        Jake Whitman

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2010, I electronically transmitted the attached document entitled Defendant Whitman's Sentencing Memorandum to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Greg Clark | gclarkatty@aol.com |
| Brian Strong | strong@azlegal.com |
| Mark John Berardoni | berardonilaw@yahoo.com |
| Tyrone Mitchell | tmitchell@tyronemitchellpc.com |
| Kevin M. Rapp | Kevin.Rapp@usdoj.gov |
| Dominic William Lanza | dominic.lanza@usdoj.gov |
| Raymond K. Woo | Raymond.woo.usdoj.gov |
| Michael Shay Ryan | ryan@azcriminaldefenders.com |

/s/ Sherry Samford