DENNIS K. BURKE
United States Attorney
District of Arizona

Dominic Lanza
California State Bar No. 225989
dominic.lanza@usdoj.gov

Raymond K. Woo
Arizona State Bar No. 023050
raymond.woo@usdoj.gov

Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite
Phoenix, Arizona 85004
Telephone (602) 514-7500

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>  v.<br><br>Jeffrey Crandell,<br><br>  Defendant. | CR-08-0255-01-PHX-GMS<br><br>**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT AND SENTENCING RECOMMENDATION** |

The United States of America, through undersigned counsel, respectfully submits this response to defendant Jeffrey Crandell's ("CRANDELL") objections to the presentence report ("PSR"). The government further submits its sentencing recommendation and requests that the Court sentence CRANDELL to 87 months of imprisonment.

**FACTUAL AND PROCEDURAL HISTORY**

In its previously-filed objections to the PSR (CR 213), the United States provided a comprehensive summary of the underlying mortgage-fraud scheme and of CRANDELL's role in that scheme. The United States also asked that CRANDELL's sentencing calculations be revised in four respects: *first*, by adding a four-level "leader/organizer" enhancement; *second*, by adding a two-level "sophisticated means" enhancement; *third*, by utilizing a different methodology for calculating the "loss amount" in this case, the effect of which would be to increase the losses attributed to CRANDELL to $2.72 million and thus trigger an additional two-

1 level enhancement; and *fourth*, by upwardly departing under U.S.S.G. § 4A1.3 to reflect the insufficiency of CRANDELL's criminal history category.

After the United States filed its PSR objections, CRANDELL filed his own set of objections (CR 223). Those objections fell within two categories. *First*, CRANDELL requested a "victim provocation" departure under U.S.S.G. § 5K2.10, under the theory that M&I Bank was aware of and provoked the fraud. *Second*, CRANDELL objected to the PSR's "loss amount" calculations on the grounds that (a) he should only be responsible for losses associated with the properties for which he personally completed the borrower's mortgage application, (b) he should not be assigned *any* loss for the properties that were "bought back" by Academy Mortgage, and (c) when calculating the loss from other properties, the Court should offset the loan amount by the value of the land at the time of the *fraud*, not by its value at the time of disposition.

After both sets of objections were filed, the Probation Office issued its addendum to the PSR. In that addendum, the Probation Office sustained the government's first two objections (*i.e.,* adding "sophisticated means" and "leader/organizer" enhancements) but rejected the government's final two objections. The Probation Office also rejected all of CRANDELL's objections. Consequently, the Probation Office revised the PSR to increase CRANDELL's net offense level to 27. The Probation Office also revised its sentencing recommendation, concluding that CRANDELL should receive a low-end sentence of 70 months' imprisonment.

///
///
///

**ARGUMENT**

**I.     The Probation Office Correctly Rejected All Of CRANDELL's PSR Objections.**

As noted, the Probation Office has already evaluated CRANDELL's objections to the PSR and concluded they are unavailing. The United States agrees with the Probation Office, for the reasons stated below.

  A. <u>A "Victim Provocation" Departure Is Not Warranted Here</u>.

CRANDELL's request for a victim-provocation departure under U.S.S.G. § 5K2.10 fails on both the law and the facts. First, the request lacks legal merit. Section 5K2.10 is meant to apply in cases of *physical violence*, such as where a defendant uses excessive force in response to a threat made by the victim. Indeed, the text of section 5K2.10 specifically notes that "[t]his provision usually would not be relevant in the context of non-violent offenses," and the enumerated factors under section 5K2.10 (such as "[t]he size and strength of the victim . . . in comparison with those of the defendant" and "the victim's reputation for violence") plainly presuppose that the provision will be applied only in violent crime cases. CRANDELL tellingly fails to cite a single case ever applying this provision in the mortgage-fraud context.

Second, the request is also factually unsupported, for the simple reason that M&I Bank did not "provoke" CRANDELL to commit fraud. At most, it might be said that M&I Bank should have been *more careful* and inspected mortgage applications more closely before approving large loans. But to say M&I Bank "provoked" CRANDELL to commit fraud is like saying a homeowner "provoked" a burglary by leaving his front door unlocked or by not buying a security alarm. This attempt to shift blame from the perpetrator to the victim should be firmly rejected.

The supposed examples of "provocation" cited in CRANDELL's brief only underscore this point. For example, although CRANDELL faults M&I Bank for not realizing that some applicants (Rogers and Frazier) lacked sufficient assets and income to qualify for large mortgages, CRANDELL ignores that the fact that he was *personally responsible* for concealing these borrowers' true financial picture from the bank. Indeed, Rogers told CRANDELL that he had only $30,000 in savings, but CRANDELL falsely stated in the application that Rogers had

$235,000 in savings and then created and submitted a doctored bank statement (which appeared to denote a $218,000 balance) in support of Rogers' application. It is difficult to comprehend how M&I Bank could be said to have "provoked" such obvious acts of fraud.

### B.   CRANDELL's Loss-Calculation Objections Are Unavailing.

The PSR concludes that CRANDELL should be responsible for the losses associated with 12 of the 19 properties at issue in this case (*i.e.,* all of the Chandler Heights and Queen Creek properties but none of the Gilbert properties). *See* PSR ¶ 10, 12.  The PSR utilizes two different methodologies for calculating the losses associated with those 12 properties.  For the two properties that M&I Bank retained on its books until they were sold at foreclosure sales, the PSR concludes that the "loss amount" is the original loan amount minus the amount recouped through the foreclosure sale. *See* PSR ¶¶ 10-11.  As for the remaining 10 properties (which were either paid off through construction loans or "bought back" by Academy Mortgage), the PSR concludes that the relevant "loss amount" metric is the defendants' gain. *See* PSR ¶¶ 10-11.  Based on all of this, the PSR concludes that CRANDELL is responsible for $1.64 million in losses, enough to trigger a 16-level enhancement under U.S.S.G. § 2B1.1(b)(1).

CRANDELL objects to these loss calculations on three independent grounds.  As shown below, none of his objections has merit.

### 1.   **The PSR properly holds CRANDELL accountable for the Chandler Heights and Queen Creek properties**.

CRANDELL objects to the PSR's loss calculations on the ground that "the probation department uses all 18 properties in formulating its calculations, rather than the six properties of which [CRANDELL] participated in the loan applications as admitted to in the factual basis of the plea agreement."  *See* CR 223 at 15.  CRANDELL contends that he should be held responsible only for the properties for which he personally prepared the fraudulent loan application. *Id.* at 17-19 ("[T]he proper calculation of actual loss . . . should be determined by evaluating the loss with respect to the six individual lots for which Defendant prepared the loan applications.").

4

1  This objection appears to rest on a simple misunderstanding of the PSR. The Probation Department has not attempted to hold CRANDELL responsible for *all* of the properties at issue in this case. To the contrary, the PSR declines to hold CRANDELL responsible for any of the seven Gilbert properties and deems him responsible only for the losses associated with the 12 Chandler Heights and Queen Creek properties.

Nor is there any merit to CRANDELL's claim that his exposure should be limited to the six properties identified in the factual basis of his plea agreement. In fact, CRANDELL was responsible for preparing *all* of Queen Creek loan applications and *all but one* of the Chandler Heights loan applications (CRUM prepared the application for Lot 3, Parcel A). What's more, CRANDELL does not dispute that he was the underlying owner of all nine Queen Creek lots, which he deeded to his brother-in-law to avoid scrutiny, *see* PSR ¶ 7, or that he reached a secret agreement with WHITMAN to split the profits from the sale of the Chandler Heights lots. PSR ¶ 4. The bottom line is that CRANDELL was deeply and personally involved with the Chandler Heights and Queen Creek deals and is thus responsible for the losses associated with all of the properties in those developments (not just the six properties identified in his plea agreement).

2. **The PSR properly holds CRANDELL responsible for the Queen Creek lots that were reacquired by Academy Mortgage**.

CRANDELL next contends that, with respect to the five Queen Creek lots that were bought back from M&I Bank by Academy Mortgage, the "loss amount" under section 2B1.1 should be zero because M&I Bank did not suffer any loss. *See* CR 223 at 19-20.

This argument is unavailing. As previously discussed (*see* CR 213 at 20-21), the fact that *M&I Bank* may have avoided a loss with respect to the five Queen Creek properties does not end the analysis. Under the guidelines, so long as *any* victim suffered "reasonably foreseeable pecuniary harm that resulted from the offense," *see* U.S.S.G. § 2B1.1 note 3(A)(i), the loss is properly included in the guidelines calculus. Here, CRANDELL's conduct plainly caused others to suffer foreseeable harm. For example, many *borrowers* suffered severe financial losses and were forced to go through bankruptcy and foreclosure. Because those borrowers' losses are

difficult to quantify, however, the Probation Office has relied on the defendants' *gain* as an alternative "loss amount" metric. This approach is supported by the guidelines. *See* U.S.S.G. § 2B1.1, note 3(B).

Likewise, Academy Mortgage also was victimized by CRANDELL's conduct and suffered foreseeable losses. In fact, Academy Mortgage agreed to "buy back" the five Queen Creek properties only because the loans had been procured through fraud committed by Academy's own employees. To avoid potential litigation with M&I Bank—which had relied on Academy Mortgage to prepare and submit accurate loan applications—Academy Mortgage simply agreed to absorb the toxic loans on its balance sheet and eat the resulting losses. This was a foreseeable loss for which CRANDELL also may be held accountable.[1]

      3.  **The PSR properly calculates the loss offset.**

Last, CRANDELL quarrels with the Probation Office's methodology for calculating the losses associated with the properties that M&I Bank retained on its books. *See* CR 223 at 21-22. CRANDELL's position is that the Court should offset M&I Bank's losses by the market value of the underlying land "at the time of the fraud" (*i.e.,* 2005), rather than by the amount M&I Bank actually obtained when it disposed of the properties at foreclosure sales in 2009.

This argument is foreclosed by the plain language of the guidelines. The computation of loss offsets is governed by note 3(E)(ii), which explains:

> Loss shall be reduced by the following: . . . In a case involving collateral pledged or otherwise provided by the defendant, ***the amount the victim has recovered at the time of sentencing from the disposition of the collateral***, of if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.

*Id.* (emphasis added).

This approach makes intuitive sense. For example, with respect to Lot 3, Parcel B in Chandler Heights (the second property identified in the loss chart in paragraph 10 of the PSR),

---

[1] As noted (CR 213 at 20-21), it is the government's position (which the Probation Office has declined to adopt) that the *total* loss suffered by Academy Mortgage (*i.e.,* the buy-back amount minus the current market value of the property) should be utilized when calculating the "loss amount" for the five Queen Creek properties. At a minimum, however, the Court should accept the Probation Office's reliance on "gain" as an alternative loss metric.

M&I Bank made an initial loan of $444,000. When the borrower defaulted on the loan, M&I Bank seized the underlying land as collateral and eventually sold the land at a foreclosure sale for $82,870. Thus, M&I Bank suffered a net loss of $361,130—the amount of the initial loan minus "the amount the victim has recovered . . . from disposition of the collateral." Although the value of the land obviously decreased between the time of the fraud (2005) and the time of the foreclosure sale (2009), the guidelines sensibly hold defendants such as CRANDELL responsible for the reduction in value under these circumstances. *See generally United States v. Parish*, 565 F.3d 528, 533, 535 (8th Cir. 2009) (rejecting defendant's argument, in mortgage fraud case, that "loss amount" calculations should not include the post-fraud reduction in the market value of properties: "The appropriate test is not whether market factors impacted the amount of loss, but whether the market factors and the resulting loss were reasonably foreseeable.").

## II.     Sentencing Recommendation: 87 Months.

As explained below, all of the relevant sentencing factors under 18 U.S.C. § 3553(a) militate in favor of a lengthy term of imprisonment. The government respectfully submits that a sentence of 87 months' imprisonment will best effectuate these factors.

*First*, the "nature and circumstances of the offense" (18 U.S.C. § 3553(a)(1)) are particularly egregious. CRANDELL was a leader of a sophisticated mortgage fraud conspiracy that has caused millions of dollars of losses and left dozens of victims in its wake. CRANDELL not only deceived lenders—by falsifying loan applications, concealing his ownership of the underlying land, and creating doctored bank statements—but also duped unsophisticated borrowers into believing they could legally purchase a lot with no money down, receive cash back at closing for mortgage payments, and then make money when they resold the property. These borrowers have been devastated, both financially and emotionally.

CRANDELL's misconduct also contributed, at least in a small way, to the mortgage fraud implosion in Arizona, which will be felt for many years through deteriorating property values and rising foreclosures. Mortgage fraud cases have dramatically increased since 2005 and are overwhelming many local federal agencies. In the past five years, the FBI's mortgage fraud

7

caseload has increased by at least 400 percent. A significant term of imprisonment for CRANDELL will thus send a strong message that mortgage fraud will not be tolerated in the District of Arizona.

***Second***, the "history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)) also cut in favor of a significant sentence. Notably, CRANDELL concocted and carried out this scheme only one year after he had been arrested on *separate* felony charges stemming from a six-figure embezzlement and fraud scheme in Idaho. In fact, CRANDELL was awaiting sentencing on the Idaho charges at the time he was committing this offense. This is exceedingly brazen behavior.

***Third***, under section 3553(a)(2), the Court also must consider whether the sentence will "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." These factors further support the imposition of a lengthy sentence:

- <u>Seriousness of offense</u>: Mortgage fraud is a particularly serious offense that causes drastic ripple effects throughout the economy. *See, e.g., United States v. Meinel*, 2010 WL 307934, * 3 (E.D. Wis. Jan. 19, 2010) (noting that mortgage fraud is a "serious" crime that "causes financial losses to lenders, contributes to the decline of the market, and harms the neighborhoods containing foreclosed properties"). Consequently, and as discussed *infra*, courts have not hesitated to impose sentences of 15 years or more in mortgage fraud cases.

- <u>Respect for law</u>: CRANDELL exhibited an utter lack of respect for the law by committing this offense at the same time he was resolving his Idaho embezzlement charges.

- <u>Just punishment</u>: Significant punishment is justified here due to the seriousness of the offense and the amount of harm caused. As noted, CRANDELL's misconduct left a string of victims in its wake, including banks, his employer, and many individual borrowers.

- <u>Adequate deterrence</u>: This case presents a heightened need for deterrence, both specific and general. Specific deterrence is an important consideration because CRANDELL participated

8

in this fraudulent scheme—as a leader and organizer, no less—while under the cloud of the Idaho embezzlement charges. Meanwhile, there is also a heightened need for general deterrence because the underlying crime—mortgage fraud—is so pernicious and devastating. *See, e.g., United States v. Khemraj*, 2009 WL 365971, *2 (E.D.N.Y. Feb. 5, 2009) (imposing a 97-month sentence against the "leader of a mortgage fraud conspiracy" and concluding that general deterrence was a "major consideration" supporting this sentence: "The sentence will send a clear message that any involvement in mortgage fraud will result in a substantial prison sentence"); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'") (citation omitted).

- Protect the public: As noted, CRANDELL has demonstrated a "propensity for criminal behavior" by participating in two different fraud schemes in rapid succession. *United States v. Wallace*, 573 F.3d 82, 95-96 (1st Cir. 2009) ("The timing of the commission of the [new crime] at a time when 'one would expect a careful abidance to the law . . . demonstrated his propensity for criminal behavior.") (citation omitted). A lengthy term of incarceration will thus protect the public through incapacitation.

***Fourth***, under section § 3553(a)(4), the Court also must consider the sentencing range established by the sentencing guidelines for the defendant's offense. Although the guidelines are obviously no longer binding on the Court, the Supreme Court has emphasized that they still should be utilized as the "starting point and initial benchmark" for sentencing decisions, *Gall v. United States*, 552 U.S. 38, 49 (2007), and deserve "respectful consideration." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

Here, the government's recommended sentence of 87 months' imprisonment comports with § 3553(a)(4) because it falls within the sentencing range of 70-87 months calculated by the Probation Department.[2]

---

[2] Notably, when calculating this range, the PSR writer declined to adopt the government's request to include Academy Mortgage's actual losses in the loss calculus (*see* CR 213 at 20-24)
(continued...)

9

*Fifth*, and finally, section § 3553(a)(6) compels sentencing courts to consider the need to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."

Sentencing CRANDELL to 87 months' imprisonment would not create any such unwarranted disparities. Indeed, district courts have not hesitated to impose stringent sentences—often well in excess of 87 months—in mortgage fraud cases, for the simple reason that mortgage fraud is a serious crime that produces massive harms. *See, e.g., United States v. McFarland*, 2007 WL 4142782 (11th Cir. Nov. 23, 2007) (affirming within-guidelines sentence of 360 months in mortgage fraud case); *Parish*, 565 F.3d at 530 (affirming 156-month, 120-month, and 60-month sentences in mortgage fraud case); *Khemraj*, 2009 WL 365971 at*2 (imposing within-guidelines sentence of 97 months in mortgage fraud case). In fact, just a few days ago, on March 16, 2010, a district court in Arizona imposed a 200-month mortgage fraud sentence. *See* Docket No. 474, *United States v. Bernadel*, No. CR 08-256-PHX-SMM. This is not to say that those cases involved identical facts or defendants who were similarly situated to CRANDELL, but is simply meant to demonstrate that lengthy, within-guidelines sentences are regularly imposed in mortgage fraud cases.

Finally, the Court should reject any claim that CRANDELL is somehow entitled to a reduced sentence under section 3553(a)(6) based on the lesser sentences his co-defendants may receive. Section 3553(a)(6) only requires courts to avoid sentencing disparities between *similarly situated* defendants, and CRANDELL is dissimilar to his co-defendants in several important respects. First, unlike his co-defendants, CRANDELL did not agree to act as a cooperator. Standing alone, this distinction undermines any sentencing-disparity claim. *See, e.g., United States v. Carter*, 560 F.3d 1107, 1121 (9th Cir. 2009) (rejecting defendant's sentencing-disparity claim because "none of these co-conspirators was similarly situated to Carter . . . due to their

---

[2] (...continued)
or the government's assertion that CRANDELL should fall within Criminal History Category II (*see* CR 213 at 24-25). If the Court sustained the government's objections on these issues, CRANDELL's advisory sentencing range would increase to 97-121 months of imprisonment.

decision to cooperate with the government . . . . [A] sentencing disparity based on cooperation is not unreasonable."). Second, unlike his co-defendants, CRANDELL has a prior fraud-related felony conviction. This, too, renders him materially dissimilar. Third, unlike CRUM, YOUNG, and LEASTMAN, who played average-to-minor roles in the conspiracy, CRANDELL was a leader/organizer who masterminded the scheme and stood to reap the profits. *See, e.g., United States v. Winters*, 2008 WL 2080732, *1 (9th Cir. May 15, 2008) (rejecting sentencing-disparity claim because defendant played more significant role in scheme than co-defendants). Fourth, CRANDELL's conduct also was more egregious than WHITMAN's because (a) only CRANDELL created and submitted fake bank statements to M&I Bank, and (b) unlike WHITMAN, CRANDELL did not attempt to make mortgage payments on behalf of the borrowers he'd recruited after those borrowers began to default on their mortgages.

Respectfully submitted this 18th day of March, 2010.

DENNIS K. BURKE
United States Attorney
District of Arizona

*s/Dominic Lanza*

DOMINIC LANZA
RAYMOND K. WOO
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Tyrone Mitchell; Greg Clark; Brian Strong; Fred Petti; Mark Berardoni.